## S95A1150 JACKSON v. THE STATE.
### (463 SE2d 699)

HINES, Justice.

William Thomas "Junior" Jackson was convicted of malice murder in connection with the 1985 shooting death of a police informant. Prior to indictment, Jackson was released on bond. He fled the state and remained a fugitive from justice until 1994, when he was apprehended in Houston, Texas. Jackson was returned to Georgia and convicted for his part in the murder. He was sentenced to life in prison.[1]

1. Evidence was presented at trial that the victim was an informant in a drug investigation conducted by local law enforcement and the United States Army. An army lieutenant, and former undercover drug investigator, testified that the victim had arranged drug buys with, among others, Jackson. Joseph Quick was convicted of the murder in 1988. During Jackson's trial, Quick admitted that he, Quick, had fired the fatal shot. He testified that he met with Jackson and two other men to discuss killing the informant. Quick also testified that Jackson handed him the murder weapon, took him to the residence of the victim, and identified the victim as the individual to be killed. Reviewing the evidence in a light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find Jackson guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During jury selection, Jackson, an African American, utilized 13 of his 14 peremptory strikes to excuse white veniremen from the jury panels. After the State challenged Jackson's use of the peremptory strikes, the trial court determined that such disparity between the number of whites and the singular African American Jackson ex-

---

[1] The crime was committed on June 16, 1985. Jackson was arrested on August 26, 1985, granted bail on October 8, 1985, and indicted on February 18, 1986. A bench warrant was issued for Jackson's arrest on February 25, 1986, and the case was placed on the Dead Docket on March 17, 1989. In May 1994, Jackson was arrested in Houston, Texas. A verdict of guilty was returned on October 24, 1994, and sentence was entered that same day. A motion for new trial was filed on November 21, 1994, and denied on March 9, 1995. Notice of appeal was filed April 5, 1995, and the case was docketed in this Court on April 14, 1995. The case was submitted for decision without oral argument on June 5, 1995.

cused established a prima facie case of racial discrimination. See *Georgia v. McCollum*, 505 U. S. 42, 59 (112 SC 2348, 120 LE2d 33) (1992), extending the principles established in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) and holding that a criminal defendant may not engage in "purposeful discrimination on the ground of race in the exercise of peremptory challenges." See *State v. Carr*, 262 Ga. 893 (427 SE2d 273) (1993). Jackson offered explanations for each of the first seven potential jurors he excused. Respecting five of the individuals excused, the trial court refused to accept Jackson's explanations as race-neutral and seated them on the jury with seven jurors already accepted, thereby completing the jury of twelve. Juror Linda Ward was one of the five. Jackson contends that his explanation for striking Ward was race-neutral, and that the trial court erred by seating her upon the jury. We agree.

In articulating reasons for excusing juror Ward, Jackson explained that Ward is the wife of a local bondsman and an integral employee in her husband's bonding company. The court stated that it was "not going to accept that as a racially neutral explanation." Jackson then informed the court that facts would be presented which would establish that Jackson had "jumped bond." He voiced concerns that because collecting funds from defendants who "jump bond" is part of the bonding business, Ward might harbor preconceived adverse notions about defendants.

Once the opponent of the strike establishes a prima facie case of racial discrimination, "the burden shifts to the [proponent of the strike] to articulate a race-neutral explanation for striking the jurors in question." *Hernandez v. New York*, 500 U. S. 352, 358-359 (111 SC 1859, 114 LE2d 395) (1991) (plurality opinion), citing *Batson*, supra at 96-98. At this step of the inquiry, the proponent of the strike is not required to enunciate "an explanation that is persuasive, or even plausible." *Purkett v. Elem*, ____ U. S. ____ (115 SC 1769, 131 LE2d 834) (1995), rehearing denied, ____ U. S. ____, (115 SC 2635, 132 LE2d 874) (1995).[2] Rather,

> [a] neutral explanation . . . means an explanation based on something other than the race of the juror . . . . Unless a discriminatory intent is inherent in the . . . [proponent's] explanation, the reason offered will be deemed race neutral.

*Hernandez*, supra at 360. Furthermore, although the proponent of the strike must provide a " 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson*, supra at 98, n. 20, (citation omitted), "[w]hat is meant by a 'legitimate rea-

---

[2] The Supreme Court of the United States decided *Purkett* after Jackson was tried.

son' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett*, 115 SC at 1771.

In this instance, Jackson's explanation for striking juror Ward was based on a factor other than race. An interest in a bonding company, either fiscal or familial, "is not a characteristic that is peculiar to any race." *Purkett*, 115 SC at 1771, quoting *EEOC v. Greyhound Lines*, 635 F2d 188, 190, n. 3 (3rd Cir. 1980). Moreover, Jackson "articulate[d] a neutral explanation related to the particular case to be tried." *Batson*, supra at 98. The challenged juror worked for a bonding company and Jackson himself had "jumped bond." Accordingly, the trial court erred by not accepting Jackson's explanation as race-neutral.

Assuming the trial court recognized Jackson's explanation as being facially race-neutral, but refused to accept it as race-neutral because it concluded that the explanation was pretextual, the court misapplied *Batson* jurisprudence. Only after the opponent of a strike establishes a prima facie case of racial discrimination (step one), and the proponent thereof tenders a race-neutral explanation (step two), should the trial court evaluate the persuasiveness of the justification for exercising the strike and determine "whether the opponent of the strike has carried his burden of proving purposeful discrimination." (step three) *Purkett*, 115 SC at 1771, referring to the three-part test enunciated in *Batson* for determining racial discrimination in peremptory strikes. The United States Supreme Court in *Purkett* clarified the distinction between steps two and three of the *Batson* analysis:

> At . . . stage [3], implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious.

*Purkett*, 115 SC at 1771. Essentially, the trial court prematurely evaluated the persuasiveness of Jackson's explanation, thereby impermissibly placing the ultimate burden of persuasion upon the proponent of the strike. *Purkett*, 115 SC at 1771. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the opponent of the strike." Id. The trial court should have accepted Jackson's explanation as race-neutral, then proceeded to step three of the inquiry and determined whether the opponent of the strike, the State, had established that Jackson's explanation was motivated by discriminatory intent. Id.

In these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous. *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). However, here the trial court's finding was clearly erroneous, and forced Jackson to trial with an illegally constituted jury. Consequently, Jackson must be given a new trial.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 20, 1995.

*Robert F. Pirkle,* for appellant.

*Dupont K. Cheney, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellee.