A97A0224. PICKETT v. THE STATE.
(487 SE2d 653)

POPE, Presiding Judge.

Lynn Derrick Pickett was convicted by a jury of burglary and simple battery. He appeals his convictions, raising three enumerations of error.

Viewed in a light most favorable to the jury verdict, the evidence shows that at approximately 10:00 p.m. on September 13, 1994, defendant entered the bedroom of Tia Umberger, put a pillow over her head and pushed her down on the bed. Defendant asked Umberger where the money was and who else was at home. At that time, Umberger's guardian, Donna Aldridge, entered the room to investigate the whimpering noises she had heard. When Aldridge noticed defendant in the room, she began screaming for her husband. Defendant yelled at Aldridge to "shut up" and then began punching her in the face. Eventually, defendant escaped through a window, and the two women called the police.

On September 15, 1994, the two women picked defendant out of a photographic lineup. Defendant was one of the workers who had been working at Aldridge's home doing odd jobs and construction work, so Aldridge was sure of her identification. Tia Umberger took a little longer to identify defendant because his hair was different in the photograph she was shown.

Defendant testified that on the day of the incident he had worked at the women's residence doing construction work until about 6:00 p.m., at which time Aldridge's husband drove him home. He further testified that he spent the evening at a club and stayed there

until about 1:30 a.m. Defendant denied being at the Aldridge home during the incident.

1. Defendant contends that the trial court erred in ruling that his peremptory strikes of four jurors were not racially neutral and in seating the challenged jurors on the panel. We agree and reverse.

" '(T)he equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges.' *Chandler v. State*, 266 Ga. 509, 510 (467 SE2d 562) (1996), citing *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). In order to evaluate whether or not a defendant exercised his peremptory challenges in a racially discriminatory fashion, 'the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' (Punctuation and footnotes omitted.) *Chandler*, supra at 510." *Gilbert v. State*, 226 Ga. App. 230 (486 SE2d 48) (1997).

The transcript indicates that the panel from which the jury was struck consisted of twenty-nine people, of whom nine were white males; twelve were white females; four were black males; and four were black females. After using one strike for an alternate, defendant, who is a black male, used eleven of his peremptory strikes to remove eleven white jurors, nine of whom were females. The State then challenged the strikes, contending they were racially and gender motivated in violation of *Georgia v. McCollum*. The trial court found that the State had established a prima facie case of racial and gender discrimination and asked the defense to set forth their purported race- and gender-neutral reasons for the exercise of their peremptory strikes. Defense counsel provided an explanation for each of the eleven strikes, and the trial court accepted as race-neutral the reasons offered for seven of the jurors. However, the trial court ruled that defendant had failed to offer race-neutral reasons for the remaining four strikes and returned those four jurors to the jury panel.

The reasons defense counsel gave for exercising the strikes which the trial court determined were not race-neutral were: that juror no. 2 was a law student and had served as a juror in an assault case which might have addressed similar issues as the case on trial; that juror no. 6 was doing home renovations (like the victim in this case) and that she had been the victim of a burglary and had been victimized twice on entering a car; that juror no. 16 had served in the

Navy, had a military manner and had been the victim of two burglaries; and that juror no. 18 looked like the victim and might identify with her and that her father worked for NASA security. The State then argued that other jurors who had been seated on the jury had done home renovations, were going to serve in the military, and had been victims of crime.[1] At this point, the court determined that the reasons Pickett offered were not race-neutral. " '[A]lthough the proponent of the strike must provide a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges, what is meant by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.' (Citations and punctuation omitted.) *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995), citing *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 1771, 131 LE2d 834) (1995), and *Batson v. Kentucky*, 476 U. S. 79, 98 (106 SC 1712, 90 LE2d 69) (1986). '(A race-)neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral.' (Punctuation omitted.) *Jackson*, supra at 898, citing *Hernandez v. New York*, 500 U. S. 352, 360 (111 SC 1859, 114 LE2d 395) (1991) (majority opinion)." (Footnote omitted.) *Gilbert v. State*, supra at 231.

The strikes Pickett exercised with respect to juror nos. 2, 6 and 16 were not, on their face, racially discriminatory.[2] In other words, "[n]one of the rationales proffered by defense counsel was based on a characteristic or stereotype peculiar to any race. [Cit.]" *Malone v. State*, 225 Ga. App. 315, 317 (484 SE2d 6) (1997). Contrary to the trial court's finding, Pickett did offer race-neutral reasons for striking these jurors. See *O'Neal v. State*, 226 Ga. App. 224 (482 SE2d 478) (1997); *Leeks v. State*, 226 Ga. App. 227 (483 SE2d 691) (1997).

Again, as this Court recently stated in *Gilbert v. State*: "[i]t is not entirely clear from the record whether the trial court combined steps two and three of the procedure set forth in *Chandler v. State*, supra, or merely terminated the procedure at step two after finding that [Pickett] had not offered race-neutral reasons for his strikes. It is clear from the facts of this case that the court should have found [Pickett's] reasons race-neutral, and then shifted the burden at that point to the State to prove that the [three] strikes were racially motivated. As stated in *Chandler*, the burden of proving that a peremp-

---

[1] Although the State raised this argument regarding Pickett's allegedly discriminatory use of strikes against white jurors, our review of the record establishes that several of the other jurors to whom the State referred were white.

[2] Because the court erred in determining that the reasons offered for striking these three jurors were not racially neutral, we need not determine whether the court's determination was correct with respect to juror no. 18.

tory strike was exercised for racial reasons rests with the *opponent* of the strike, not its *proponent,* and at step three, the burden goes back to the opponent to prove that the strike was racially discriminatory. *Chandler,* supra at 510. If in fact the court did combine steps two and three of the process, in so doing, it improperly placed this burden upon [Pickett]." (Emphasis in original.) *Gilbert v. State,* supra at 232.

"In these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous. However, here the trial court's finding was clearly erroneous, and forced [Pickett] to trial with an illegally constituted jury." (Citation omitted.) *Jackson v. State,* 265 Ga. at 900. Pickett is therefore entitled to a new trial.

2. Defendant further enumerates as error the trial court's admission of two photographs of him which he contends impermissibly placed his character into evidence. Because it is likely that this alleged error will recur upon retrial, we will address it here.

The first photograph introduced into evidence was the actual photograph that was included in the photographic lineup shown to the two women shortly after the incident. This photograph was not referred to or labeled as a "mug shot," and no testimony was elicited at trial regarding the reason defendant's photograph was on file with the police department. Under these circumstances "the admission of the photograph of [defendant] did not indicate that [defendant] was guilty of any previous crime and was not in error. [Cit.]" *Milsap v. State,* 196 Ga. App. 820, 822 (2) (397 SE2d 168) (1990). See also *Hamilton v. State,* 196 Ga. App. 34 (395 SE2d 357) (1990).

The second photograph admitted into evidence was defendant's "mug shot" following his arrest in this case. Defendant's defense at trial was mistaken identity, and during the trial defense counsel questioned the reliability of Umberger's identification of defendant at the photographic lineup. The photograph was introduced by the State to show that defendant looked different at the time of his arrest than he did in the photograph shown the witness at the lineup. Under these circumstances, it was not error to admit the photograph into evidence. *McGinnis v. State,* 183 Ga. App. 17, 19 (3) (358 SE2d 269) (1987). See also *Blige v. State,* 208 Ga. App. 851, 853 (4) (432 SE2d 574) (1993).

3. Finally, defendant enumerates as error the trial court's ruling allowing the prosecutor to question him about a statement he made that he was going to "beat [Aldridge's] ass." This enumeration is also without merit. See, e.g., *Moak v. State,* 222 Ga. App. 36, 40 (5) (473 SE2d 576) (1996). Furthermore, "[w]here an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Cita-

tions and punctuation omitted.) *Ellison v. State*, 216 Ga. App. 639, 641 (3) (455 SE2d 361) (1995).

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED JUNE 10, 1997.

Before Judge Langham.

*Cynthia A. Price*, for appellant.

*Lewis R. Slaton, District Attorney, Shawn E. Lagrua, Kirby Clements, Jr., Assistant District Attorneys*, for appellee.