A97A0890. HINSON v. THE STATE.
(515 SE2d 203)

MCMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of trafficking in cocaine, violating the Georgia Controlled Substances Act (possession of cocaine with intent to distribute), and possession of a firearm during the commission of a crime. In a prior appeal, a majority of this Court affirmed the denial of defendant's motion to suppress and with all participating Judges agreeing we were bound by this Court's whole court decision in *Belt v. State*, 227 Ga. App. 425 (489 SE2d 157) (subsequently reversed by the Supreme Court of Georgia in *State v. Belt*, 269 Ga. 763 (505 SE2d 1)) reversed his convictions because the trial court failed, sua sponte, to give a limiting instruction contemporaneously with the introduction of extrinsic acts or similar crimes evidence. *Hinson v. State*, 229 Ga. App. 840, 842 (3) (494 SE2d 693). The Supreme Court of Georgia granted certiorari to review that latter ruling and reversed, holding that "[r]egardless of when the defendant wishes the jury instructed on the limited admissibility of similar transaction evidence, it is incumbent upon him to make a timely request to the trial court for such a charge." *State v. Hinson*, 269 Ga. 862 (506 SE2d 870) (1998). *Held*:

1. Division 3 of our prior opinion and our prior judgment of

reversal are hereby vacated, and the judgment of the Supreme Court is made the judgment of this Court. Consequently, the trial court did not err in failing to give limiting instructions about the proper purposes for which extrinsic acts or similar crimes evidence is admissible, in the absence of a timely request. Division 1 of our prior opinion is not affected by the decision of the Supreme Court of Georgia. Consequently, our previous affirmance of the denial of defendant's motion to suppress is adhered to, for the reasons expressed in both the majority opinion and in the special concurrence of Judge Eldridge. *Hinson v. State*, 229 Ga. App. 840 (1), supra.

2. Reviewing issues not previously considered, defendant first enumerates the general grounds.

Viewed in the light most favorable to the jury's guilty verdicts, the evidence adduced at trial revealed the following: Defendant was the driver of a rental car in which Officer Byers of the DeKalb County police found a

> plastic bag containing a white powdery substance. . . . Also, there was 88 plastic bags containing [suspected] crack cocaine and small individual ziplock bags. There was also a small electronic weight scale. A further check . . . [disclosed] a .45 caliber semiautomatic [pistol]. . . . [T]he magazine was fully loaded. . . . Inside of the trunk [Officer Byers] found a large leather artist portfolio case and that contained a Mossberg 500 Model 12-gauge shotgun, a pump action shotgun. . . . After the defendant was arrested, . . . [he volunteered] one statement to [Officer Byers]. . . . [Defendant] asked [Officer Byers], basically, would [the officer] let [defendant's female companion] go if he [defendant] told [Officer Byers] that all of the items . . . found [in the car] belonged to him [defendant].

It was stipulated that the substance was cocaine. When police searched the female companion, they found on her person no drugs or drug paraphernalia, no cellular or mobile telephone, no beeper or pager, nor any money. "The net weight [of the largest bag of white powder] was approximately 205 grams, which is a little less than half a pound." It was "approximately 39 percent pure." The "small bag containing six small ziplock bags . . . that had chunky material . . . weighed about two and a half grams." In a subcompact car such as defendant was driving, the semiautomatic pistol was within arm's reach, even in the glovebox.

This evidence, including defendant's statement of ownership against his penal interest, is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the

jury's verdicts that defendant is guilty, beyond a reasonable doubt of trafficking in cocaine, possessing cocaine with intent to distribute, and possession of a firearm during the commission of a crime as alleged in the indictment. OCGA § 16-13-31 (a) (1) (trafficking in cocaine); *Sims v. State*, 213 Ga. App. 151, 153 (3) (444 SE2d 121) (possession with intent to distribute); OCGA § 16-11-106 (b) (4) (possession of a firearm during the commission of a crime involving the possession or the possession with intent to distribute any controlled substance). See also *Hinson v. State*, 229 Ga. App. 840, 842 (2), supra.

3. Defendant's third enumeration of error contends the trial court erred in holding defendant's reasons for striking certain veniremen were not race-neutral and for placing four stricken jurors on the panel. For the reasons below, we agree and reverse.

The Supreme Court of the United States has

held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges. To evaluate claims that the [S]tate or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

(Footnotes omitted.) *Chandler v. State*, 266 Ga. 509 (2), 510 (467 SE2d 562).

It will rarely be the case that a party will admit that his purpose in striking a juror was racially discriminatory. Accordingly, the trial court in most cases must infer discriminatory intent from circumstantial evidence. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons( ) will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . no additional proof of discrimination is *required*." (Punctuation and footnote omitted; emphasis in

original.) *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407, 418-419) (1993). In addition, the court may consider whether "similarly-situated members of another race were seated. on the jury," or whether "the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual." *Turner* [*v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252)].

(Footnote omitted.) *McKenzie v. State*, 227 Ga. App. 778 (1), 779 (490 SE2d 522).

(a) Defendant is an African-American male who used 11 of 12 peremptory strikes to remove white venire from the panel. The record does not reveal the final composition of the petit jury. The State waived any objection to juror nos. 3 and 7. The trial court accepted defendant's reason for striking juror no. 8, a white female student who is studying to get a Master's degree in school counseling as race-neutral. But for juror no. 9, a white male student, defense counsel could only articulate "bad body language with him[, plus] his age and experience or lack of experience. . . ." The trial court noted that other jurors who were similar in age and experience were accepted, and "put [juror no. 9] back on the panel."

"The opponent of [a peremptory] strike may carry its burden of persuasion by showing that similarly-situated members of another race were seated on the jury. See, e.g., *Ford v. State*, 262 Ga. 558 (3) (423 SE2d 245) (1992)." *Turner v. State*, 267 Ga. 151 (2), supra. The trial court in the case sub judice was authorized to conclude that defendant's articulated racially neutral reason was not being neutrally applied, which is sufficient to authorize a finding of discriminatory intent. *McKibbons v. State*, 216 Ga. App. 389 (1), 390 (455 SE2d 293).

(b) Defendant next struck juror no. 15, "an older lady . . . 45 years old. She used to work with U. P. S. . . . Although she is a homemaker now, she worked with an engineering firm for 13 years. . . ." Defense counsel's articulated reason for striking this juror was

I just don't think a housewife belonged on this jury, . . . because of the everyday experiences and being exposed to television and the tabloid news casts. . . . [The trial court ruled that since juror no. 15] has worked for 13 years [outside the home] she has [not] been a homemaker her entire life . . .

and put her back on the jury. Given counsel's factual inaccuracy (as

opposed to lack of knowledge) regarding this juror's life experiences underlying defendant's stated racially neutral reason, the trial court was authorized to conclude that stated reason was pretextual.

(c) Juror no. 16 was struck because she is

> a 64-year-old [former] teacher whose husband is an insurance auditor [who, in defense counsel's] experience, is a pro-prosecution . . . juror. . . . [Defense counsel compared this juror to a situation where she was of the same race as juror no. 16] and her husband was a deacon and she were 64 years old, . . . just because [counsel had] had bad luck in the past with deacon's wives. . . . [The trial court recalled that juror no. 16's teaching] certificate has expired and now she is a para[professional] with the vision program [giving] eye exam tests to the students. . . . [Juror no. 16 also] said her son as a teenager was arrested for a D.U.I., had a terrible crash and she said it probably saved his life.

Counsel clarified that juror no. 16 "said she works with young children and she is a teacher[,] and this is a drug case."

The trial court stated it

> could accept [a drug-related] rationale if [defense counsel] had asked her as a para professional in the school system does she come in contact with children who use drugs or is there a big drug problem at her school, do kids hang around outside of the school selling drugs or is she aware of any drug problem. It just wasn't asked and there is no foundation for it.

The trial court further determined that any concern the defense had between this juror's school responsibilities and drugs was "just speculation[, and] put [juror no. 16] back on the panel."

The trial court's analysis miscast the ultimate burden of persuasion in a challenge to a peremptory strike from the opponent to the proponent of the strike.

> We must keep in mind that the reasonable suspicion of a juror's impartiality that prompts the exercise of a peremptory challenge need not rise to the level of justifying the removal of a venireman for cause. *Henry v. State*, 265 Ga. 732 (2) (462 SE2d 737) (1995). We must also keep in mind that the [proponent's] multiple rationales for the exercise of [this] strike were facially race-neutral and were supported by [sufficient undisputed] facts elicited during voir dire. . . . The [proponent's] failure to ask [additional] ques-

tions does not evidence racial animus.

*Turner v. State*, 267 Ga. 152-153 (2), supra. Consequently, the trial court in this case clearly erred in concluding the State had met the opponent's burden of proof in challenging this peremptory strike.

(d) After accepting that "someone in [juror no. 18's] family is married to a Rockdale officer . . . [as] a pretty valid reason" for exercising a peremptory challenge, the State challenged defendant's dismissal of juror no. 19, "[who] is 51 years old, lots of life experiences, . . . two children, married, [and] is a manager with the Department of Human Resources." Defense counsel objected to this juror on the ground that she is "[a] career state employee."

The trial court determined that no bias on the part of this juror was "demonstrated in the record" and further concluded that the client's concurrence in dismissing a career state employee "is not sufficient to get [past] a [reverse] *Batson* [challenge]." Juror no. 19 was then put back on the panel.

Defense counsel's inference that a career state employee might be an establishment-oriented juror tending to favor the government is neither whimsical nor fanciful, and it is certainly race-neutral. The trial court did not indicate she thought these race-neutral reasons were pretextual, and the State offered no further argument. Moreover, the trial court's written findings denying defendant's motion for new trial on this ground erroneously continue to place the onus on the proponent to establish bias during voir dire. Consequently, the record does not authorize a finding that the State, as the opponent of this peremptory strike, met its burden of persuasion to rebut the race-neutral explanation given by defense counsel. The trial court's reasoning to the contrary again miscasts the ultimate burden of persuasion, which in this case never shifts from the State as the opponent of the strike to establish racially discriminatory intent despite race-neutral explanations.

(e) In each of these two instances, the error in reseating a juror peremptorily struck by the criminal defendant who nevertheless proffered racially neutral explanations for each strike must be deemed presumptively harmful. "Since the [S]tate [for aught that appears of record] failed to meet its ultimate burden of persuasion, the reinstatement of the two jurors resulted in an illegally constituted jury. Therefore, [defendant Hinson] is entitled to a new trial." *Chandler v. State*, 266 Ga. 510, supra.

4. "The defendant's remaining enumerations have been considered and are found to be without merit or to present circumstances unlikely to recur upon any retrial." *Hinson v. State*, 229 Ga. App. 842-843 (4), supra.

*Judgment reversed. Smith, Ruffin and Barnes, JJ., concur. Beas-*

*ley, P. J., concurs specially. Andrews and Eldridge, JJ., dissent.*

BEASLEY, Presiding Judge, concurring specially.

I concur fully in Division 3 of the majority opinion, but not fully in Division 1, which I do not join although I concur in the ruling. As to Division 2, the court has already decided that the evidence was sufficient to sustain the conviction on all counts, as this was ruled on in Division 2 of the prior opinion and is not affected by the Supreme Court's reversal.[1] It is res judicata.

With respect to Division 4, I concur because we are bound by the earlier ruling when the case was first before us. Moreover, even upon reconsideration it is a proper disposition of the remaining enumerations of error.

ELDRIDGE, Judge, dissenting.

The defendant, an African-American, used 11 out of 12 strikes to remove white jurors. This established a prima facie case for the use of race-based strikes. See, e.g., *Russell v. State*, 230 Ga. App. 546, 548 (2) (497 SE2d 36) (1998). Further, this Court has concurred with the trial court that two of the defense's allegedly "race-neutral" explanations for the exercise of such strikes were, in reality, simply *pretext*, further strengthening the prima facie case.

However, after a strong prima facie case demonstrating the use of race-based strikes and after a demonstration that the defense used allegedly race-neutral explanations as a cover-up for impermissible race-based strikes, this Court then finds that the trial court was unauthorized to find that two additional explanations were pretext. Why? Because "the record does not authorize a finding that the State, as the opponent of [the] peremptory strike[s], met its burden of persuasion to rebut the race-neutral explanation[s] given by defense counsel." This is wrong.

The determination as to whether the State met its burden of persuasion is the trial court's, not ours. The evidence was clearly there for the trial court to disbelieve the defense, and the trial court had the authority to do so. In a *McCollum* challenge, the State's burden of persuasion need go no further than the prima facie case: "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U. S. 502, 511 (113 SC 2742, 125 LE2d 407) (1993); *McKenzie v. State*, 227 Ga. App. 778, 779 (490 SE2d 522) (1997).

The majority's determination in the instant case must be

---

[1] *Hinson v. State*, 229 Ga. App. 840, 842 (2) (494 SE2d 693) (1997).

examined in light of the above.

1. The defense struck juror no. 16. When asked to explain the strike, defense counsel stated:

> Judge, I had a no here for Mrs. Robinson because of a 64-year-old teacher whose husband is an insurance auditor, in my opinion and my experience, is a prosecution witness — a pro-prosecution juror. I mean, you know, if she were white and her husband was a deacon and she were 64 years old, I would say, Judge, you know, just because I have had bad luck in the past with deacon's wives that isn't race neutral but in 28 years, I'm not smart, but you know I had to learn one or two things.

The trial court — rightfully — did not accept this explanation.

It was only after the trial court refused to accept the first explanation that defense counsel added that Robinson "was a teacher and she works with young children. . . . So, I mean, this is a drug case." However, Robinson was a teacher's aide, not a teacher. Such was a misstatement of the record. Further, she worked with young children in a local school's *vision* program, not in the classroom or in counseling. Contrary to the majority's position, there was no relation to drugs in Robinson's voir dire testimony, no mention of drugs, and no such reasonable "inference" was raised by her testimony.

Most importantly, and also contrary to the majority's opinion, the defense initially did not state that she was struck because of any drug-related inference; the defense "had a no for Mrs. Robinson" because defense counsel decided that a white, 64-year-old insurance adjuster's wife would be pro-prosecution.[2] Based on the prima facie case, the prior improper use of strikes, and the lack of factual support for the second explanation offered when defense counsel's initial explanation rightfully failed, the record supports the trial court's ruling. This Court has no authority to reverse the trial court's legitimate credibility determination that defense counsel's "race-neutral" explanation for striking Robinson was, in essence, a crock.

2. The defense struck juror no. 19, a 51-year-old white female employee with the Department of Human Resources in the contracts and purchasing department. The explanation was because she was a "career state employee." That was it. The majority contends that "[d]efense counsel's inference that a career state employee might be

---

[2] "[W]here racially-neutral and neutrally applied reasons are given for a strike, the simultaneous existence of any racially motivated explanation results in a *Batson* violation." *Lingo v. State*, 263 Ga. 664, 667 (1) (c) (437 SE2d 463) (1993); *Strozier v. Clark*, 206 Ga. App. 85, 87 (5) (424 SE2d 368) (1992).

an establishment-oriented juror tending to favor the government is neither whimsical nor fanciful." However, that is the inference drawn by the *majority*. Defense counsel never stated such, and the trial court did not draw such inference.[3] The majority raises its own inferences; expands defense counsel's sole explanation, "career state employee"; and substitutes its own judgment for that of the trial court. However, based upon the prima facie case, the defense counsel's prior use of pretextual explanations, and defense counsel's inability to articulate a cogent rationale for striking yet another older white female, the trial court did not err in disallowing the strike. The record supports the trial court's credibility determination.

3. Finally, the majority holds that "the trial court's written findings denying defendant's motion for new trial . . . erroneously continue to place the onus on the proponent to establish bias during voir dire." However, this is simply inaccurate.

In its order, the trial court found that "[t]he State made a prima facie showing that the defense had discriminated against whites in its peremptory strikes." Thereafter, the trial court held:

> [T]he Court must consider the burden of persuasion on the State, as opponent of the strikes, in reaching a conclusion as to whether defense counsel's strikes were motivated by discriminatory intent. The Court has considered the State's burden of persuasion, the content of defense counsel's explanations, and defense counsel's demeanor. The Court concludes that defense counsel's explanations for his strikes were subjective, vague, not based on the juror's answers on voir dire, and not neutrally applied. It is for these reasons the Court placed four jurors struck by the defense back on the jury.

The trial court placed the burdens exactly where they belonged and evaluated the defense strikes in light thereof. See, e.g., *Haynes v. State*, 234 Ga. App. 272, 276 (5) (507 SE2d 151) (1998). It just does not get any cleaner than that.

This Court has repeatedly substituted its own evaluation of the striker's explanations for that of the trial court. In those instances wherein the trial court *disbelieves* otherwise race-neutral reasons, i.e., *McCollum* challenges, this Court routinely reverses.[4] Accord-

---

[3] "[W]e are not authorized to create an inference of discrimination where none is apparent, and where none has been found by the trial court, to whose findings we must give great deference." *Lingo v. State*, supra at 668.

[4] See, e.g., *Malone v. State*, 225 Ga. App. 315 (484 SE2d 6) (1997); *O'Neal v. State*, 226 Ga. App. 224 (482 SE2d 478) (1997); *Leeks v. State*, 226 Ga. App. 227 (483 SE2d 691) (1997); *Gilbert v. State*, 226 Ga. App. 230 (486 SE2d 48) (1997); *Pickett v. State*, 226 Ga. App. 743

ingly, the efficacy of *McCollum* in Georgia has been seriously compromised. A review of the record in this case shows that this is yet another instance where a conscientious trial judge attempted to follow the law as it relates to *McCollum* and to hold both parties to that law, as well. "In evaluating the trial court's findings, this Court must keep in mind the unique perspective the trial court judge has in evaluating the rationale given by the [striker]. A cold transcript cannot convey all of the subtle nuances of the process of jury selection." *Berry v. State*, 263 Ga. 493, 494 (435 SE2d 433) (1993). Yet this Court, again, reverses and substitutes its own judgment as to whether the State met its "burden of persuasion." It is wrong and I dissent.

I am authorized to state Judge Andrews joins in this dissent.

DECIDED MARCH 30, 1999 — 

*Manning & Leipold, Calvin A. Leipold, Jr., Sharon Smith-Knox*, for appellant.

Fitzgerald Hinson, *pro se*.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Benjamin M. First, Assistant District Attorneys*, for appellee.

---

(487 SE2d 653) (1997); *Smith v. State*, 229 Ga. App. 765 (494 SE2d 757) (1997); *Smith v. State*, 232 Ga. App. 458 (501 SE2d 622) (1998).