## A00A2045. McBRIDE v. THE STATE.
(545 SE2d 332)

RUFFIN, Judge.
Kenneth McBride was charged with aggravated assault with attempt to rape (Count 1), aggravated assault (Count 2), and kidnapping (Count 3), arising out of an alleged attack upon a woman in October 1997. With respect to Count 1, the jury found McBride guilty of the lesser offense of battery. The jury also found McBride guilty of kidnapping, but could not reach a verdict on Count 2. McBride appeals, claiming that the trial court erred in sustaining the State's challenge to his peremptory strikes of certain jurors and in excluding evidence that the victim had made prior false allegations of sexual misconduct against another person. For reasons discussed below, we reverse.

1. During the jury selection process, McBride used six of his peremptory strikes to exclude white females from the jury, and used two additional strikes to exclude white females as potential alternate jurors. The State challenged these strikes pursuant to *Georgia v.*

*McCollum*,[1] which extended the rule of *Batson v. Kentucky*[2] to cases involving peremptory challenges made by criminal defendants.[3] After McBride's attorney offered explanations for the strikes, the trial court upheld the State's challenge to three of the strikes, ordering the stricken jurors reinstated. McBride argues that this was error, and we agree.

In evaluating a challenge under *Batson* or *McCollum*, a trial court must employ a three-step process to determine whether peremptory challenges were used in a discriminatory manner. First, the opponent of the strike must make a prima facie showing of racial discrimination.[4] Once a prima facie case is established, the proponent of the strike must "set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of [his] strikes."[5] To satisfy his burden at this stage, "the proponent of the strike need not proffer an explanation that is persuasive or even plausible — all that is required is an explanation that is facially race-neutral."[6] Finally, once the proponent has offered a facially race-neutral explanation, "[t]he trial court must then determine, considering the totality of the circumstances, whether the opponent of the strikes has shown that the proponent was motivated by discriminatory intent in the exercise of his strikes."[7] The ultimate burden of persuasion rests on the opponent of the strike, who must demonstrate that the real reason for the strike was unlawful discrimination.[8]

The three jurors reinstated by the trial court in this case were juror nos. 24, 70, and 71. Juror no. 24 was a pharmacist whose husband was a loan officer and litigation specialist with a credit association. Defense counsel stated that he struck her because he was concerned that she might have "experience with the legal process that the other jurors would not have" and that she might therefore "have an inordinate impact or influence with the jury." In upholding the State's challenge to this strike, the trial court stated that

> the Court finds as far as the juror being a pharmacist and her husband being a loan officer with apparently the local

---

[1] 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992).

[2] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[3] See *Chandler v. State*, 266 Ga. 509-510 (2) (467 SE2d 562) (1996).

[4] Id. at 510 (2). We note that the *Batson* analysis has also been extended to claims of gender discrimination in the jury selection process. See *Pickren v. State*, 272 Ga. 421, 424 (4) (530 SE2d 464) (2000). However, although the State's contention was that McBride impermissibly struck white female jurors, it did not articulate a theory of gender discrimination below, and the trial court considered the challenges only in the context of race discrimination.

[5] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).

[6] Id.

[7] Id.

[8] See *Chandler*, supra at 510; *Curry v. State*, 238 Ga. App. 511, 514 (1) (a) (519 SE2d 269) (1999).

> Production Credit Association is not a sufficient race neutral reason for this strike to have been taken. . . . I have found that that is not sufficient enough race neutral reason at this point in time.

With respect to juror no. 70, defense counsel explained his reasons for striking her as follows: "[S]he is single, she is young, she is a white female, which we are discussing here. The issue is this case deals with a young single white female and we were concerned about identity, the juror identifying with the situation of the alleged victim." The trial court rejected this reasoning, stating simply that it was "not sufficient."

As to juror no. 71, defense counsel explained that her son had been permanently impaired by an act of violence, and that he was "concerned that the juror might transfer concerns with her son's case to the incident [sic] case." In rejecting this reasoning, the court noted that another male juror, who had not been struck, had a brother who had been the victim of violence. The court then stated, "So the Court at this time is going to find that as to number 71, that was not a sufficient race neutral reason."

In reinstating the three jurors, the trial court did not purport to find that defense counsel exercised the peremptory strikes for discriminatory reasons. Rather, the court in each case reinstated the juror because the reason given by defense counsel was "not sufficient" or was "not a sufficient race neutral reason" to justify the strike. The question, however, is not whether the reason given was "sufficient" in the court's view to justify the strike — a defendant may exercise a peremptory strike for any reason except discrimination on the basis of race or gender.[9] The question, therefore, is whether the strike was motivated by discriminatory intent. By focusing simply on the "sufficiency" of defense counsel's proffered explanations, the trial court failed to consider the ultimate issue of whether the State had proven intentional discrimination.[10]

The State argues that, since the trial court sustained its challenges to the stricken jurors, we may *infer* that the court found that

---

[9] See *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995) ("'[W]hat is meant by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.'").

[10] With respect to juror no. 70, we note that defense counsel's explanation for the strike may not have been facially race-neutral, since counsel admitted that he struck her because she was "a young single white female" who might "identif[y] with the situation of the alleged victim." See *Hutchison v. State*, 239 Ga. App. 664, 665 (2) (522 SE2d 56) (1999). Even assuming that this explanation was facially improper, however, the proffered explanations for striking the other two jurors were clearly race-neutral. Thus, the trial court could not simply reject these explanations as "not sufficient," obviating the need to consider the ultimate issue of purposeful discrimination.

the State had met its burden of proving discriminatory intent. We do not agree. It is true that, as a general proposition, judges are presumed to know the law and to follow it in making their rulings.[11] Thus, for example, we may often assume that the trial court applied the correct burden of proof,[12] that it considered only admissible evidence,[13] or that it applied the proper test for determining the admissibility of evidence.[14] However, the assumption that a trial court has correctly applied the law is a theoretical one,[15] and has no place where it affirmatively appears to the contrary.[16] Based on the trial court's own description of its reasoning, it affirmatively appears that the court simply determined that the race-neutral reasons articulated by defense counsel were not "sufficient" to justify the strikes, without considering the ultimate issue of discriminatory intent. Thus, the trial court "forced [McBride] to trial with an illegally constituted jury. Consequently, [McBride] must be given a new trial."[17]

In reaching this conclusion, we are mindful of our comments in *Malone v. State*, where we stated that

> [w]e realize the difficulty trial judges face in creating a record which unequivocally shows that they considered each step of the three-part analysis separately. . . . However, it is absolutely clear that the burden of persuading the trial court that the strikes were racially motivated rests with, and never shifts from, the opponent of the strike. By requiring judges to consider each of the three parts of the *Batson* analysis separately, we safeguard against the burden of persuasion being improperly shifted to the strike's proponent.[18]

This is not to say that the trial court must *expressly* make findings at each step of the analysis — it is sufficient if the record demonstrates that the trial court in fact applied the proper analysis.[19] Where, however, it appears from the record that the trial court improperly placed the burden on the proponent to articulate a persuasive reason

---

[11] *Windom v. State*, 187 Ga. App. 18, 19 (2) (369 SE2d 311) (1988).

[12] See *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (5) (440 SE2d 517) (1994).

[13] See *In the Interest of C. G. B.*, 242 Ga. App. 705, 711 (4) (531 SE2d 107) (2000).

[14] See *Windom*, supra.

[15] See *Sparks Specialty Co. v. Moss*, 110 Ga. App. 585, 586 (139 SE2d 345) (1964); *Winston Corp. v. Park Elec. Co.*, 130 Ga. App. 508 (203 SE2d 753) (1973).

[16] See *A. L. L.*, supra (will not presume trial court committed error " 'where that fact does not affirmatively appear.' ").

[17] *Jackson*, supra at 900. See also *Chandler*, supra at 509-510 (2); *Hinson v. State*, 237 Ga. App. 366, 369-371 (3) (515 SE2d 203) (1999); *Malone v. State*, 225 Ga. App. 315, 318-319 (1) (484 SE2d 6) (1997).

[18] (Citation omitted.) Id. at 318-319.

[19] See *Hyman v. State*, 272 Ga. 492, 494 (2) (531 SE2d 708) (2000); *Curry*, supra.

for the strike, reversal is required.[20]

2. Because of our ruling above, we need not address McBride's other enumeration, which contends that the trial court improperly excluded evidence under the Rape Shield Statute, OCGA § 24-2-3. The Rape Shield Statute was applicable because McBride was being prosecuted for aggravated assault with attempt to rape.[21] However, his conviction of the lesser included offense of battery amounted to an implicit acquittal on the greater charge; thus, McBride cannot now be retried for aggravated assault with attempt to rape, notwithstanding the reversal of his conviction on the lesser offense.[22] Since it does not appear the Rape Shield Statute would be implicated in any retrial, we cannot say it is likely that the error McBride complains of will recur on retrial.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 1, 2001.

*Lorenzo C. Merritt*, for appellant.
*R. Joseph Martin III, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.

---

[20] We reject as impractical the idea of remanding this case to the trial court for a determination on the issue of discriminatory intent, recognizing the difficulty of making such a factual determination based on a cold transcript of a jury selection two and a half years ago. Cf. *Jackson*, supra (reversing and remanding for new trial); *Chandler*, supra at 510; *Hinson*, supra; *Malone*, supra.

[21] See OCGA § 24-2-3 (statute applicable to "prosecution[s] for rape"); *Blount v. State*, 172 Ga. App. 120, 121 (1) (322 SE2d 323) (1984) (statute applies to prosecutions for aggravated assault with attempt to rape).

[22] See *McKibben v. State*, 212 Ga. App. 866, 867 (443 SE2d 640) (1994).