## A01A0436. WILLIAMS v. THE STATE.
(548 SE2d 63)

BLACKBURN, Chief Judge.

Antonio Monteith Williams appeals his convictions of rape, burglary, sodomy, and robbery by force. After the State challenged Williams' use of peremptory strikes, the trial court determined that Williams, a black male, failed to provide race-neutral explanations and seated three potential jurors originally struck by Williams. On

appeal, Williams contends that the trial court erred, claiming that the State failed to carry its burden of persuasion. See *Georgia v. McCollum*,[1] extending the principles established in *Batson v. Kentucky*,[2] and holding that a criminal defendant may not engage in "purposeful discrimination on the ground of race in the exercise of peremptory challenges."

> In *Purkett v. Elem*,[3] the United States Supreme Court established a three-step test for evaluating challenges to peremptory strikes[: (1)] [t]he opponent of a peremptory challenge must make a prima facie showing of racial discrimination; [(2)] the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; [and (3)] the trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Punctuation omitted.) *Mitchell v. State*.[4]

In the present case, the State objected to Williams' use of 11 of his 12 peremptory strikes against white potential jurors. The State pointed out that the venire panel consisted of 20 white people and 16 people of other races. The jury initially selected consisted of ten black jurors and two white jurors. Pursuant to the first step in the analysis, the trial court determined that the State had made a prima facie showing of racial discrimination. This determination is not challenged on appeal.

Under the second step in the analysis, Williams explained the reasons for each of his strikes. Williams struck juror no. 3, a white female, because she lived in a rural environment and her husband was retired. Williams thought that she would have a lack of contact with people who lived in downtown Macon, like himself. Juror no. 4, a white female, was struck because she lived in north Macon and had previously dealt with the law firm representing Williams. Juror no. 5 was struck because she worked with the probate court, and Williams thought there was a potential that she would be more favorable to the prosecution. Williams struck juror no. 6, a white male, because he was an architect who lived in north Macon and he would not be familiar with Williams' culture. Juror no. 10, a white male, was struck because he worked with the Department of Revenue, and Williams did not think he would be tolerant of law breakers. Williams

---

[1] *Georgia v. McCollum*, 505 U. S. 42, 59 (112 SC 2348, 2359, 120 LE2d 33) (1992).

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[3] *Purkett v. Elem*, 514 U. S. 765, 766-769 (115 SC 1769, 1770-1771, 131 LE2d 834) (1995).

[4] *Mitchell v. State*, 230 Ga. App. 149 (495 SE2d 626) (1998).

struck juror no. 11 because the juror's wife was an employee of an obstetrics/gynecology office, and it might make the juror more sensitive to the concerns of the victim in this case, where graphic female evidence would be introduced. Juror no. 13 worked at Robins Air Force Base and Williams struck him to get to a subsequent juror who was more desirable. Williams struck juror no. 16 because his wife worked at Charter Medical and that might give the juror a sensitivity to the victim. Juror no. 21 was struck because she was a doctor who worked in the clinic next to Williams' lawyer's office. Juror no. 25 was struck because she worked for GEICO Insurance, and Williams thought that insurance agents had a lack of tolerance for wrong behavior. And finally, Williams struck juror no. 31 because her husband was a police officer, she was a victim of a sexual assault, and the trial court had denied Williams' motion to strike her for cause.

After Williams had explained his reasons for striking the jurors, the trial court allowed the State to rebut Williams' explanations. The State's general response to most of the explanations was, "I fail to see how those factors alone could constitute a race-neutral reason, given the facts of this case."

The trial court granted the State's motion with regard to juror nos. 3, 6, and 21. With regard to juror no. 3, the trial court quibbled with Williams' factual determination that the juror lived in a rural area. The trial court specifically disagreed with Williams' characterization of the area where the juror lived as rural and determined that there was no evidence whether the crime being tried was committed in downtown Macon or in an apartment close to the city limits. As to juror no. 6, the trial court stated that it agreed with the State's proposition that simply because the juror was an architect and his wife was a retired RN "does not carry the day in the Court's view." The trial court stated: "And, finally, on . . . No. 21, just the fact that she works for an orthopedist does not carry the day in this Court's judgment."

The purpose of the third step in the *Batson* analysis is to determine whether the opponent of the strike, in this case, the State, has proven discriminatory intent. *Smith v. State*.[5] This analysis involves the motive of the proponent of the strike. It does not involve the factual basis of the strike. In fact, a strike may be based on mistake, ignorance, or idiosyncracy, provided that the reason for the strike is neutral. *Gamble v. State*.[6]

> Even where . . . it is fairly easy to understand why the
> trial court found some of the reasons given for the peremp-

---

[5] *Smith v. State*, 232 Ga. App. 458, 459 (1) (501 SE2d 622) (1998).
[6] *Gamble v. State*, 257 Ga. 325, 326 (2) (357 SE2d 792) (1987).

tory strikes to be unpersuasive, the law protects the strikes. . . . [T]he explanations given were facially valid and evidenced no discriminatory intent, i.e., were race-neutral. None was based on a characteristic or stereotype peculiar to any race.

(Citation and punctuation omitted.) *Smith*, supra at 460 (1).

In these matters, the findings of the trial court are entitled to great deference and should not be disturbed unless clearly erroneous. *Gamble*, supra. "In evaluating the persuasiveness of the [defense counsel's] explanation, we are concerned only with whether the trial court's credibility determination that racial motivation did . . . exist was clearly in error." (Punctuation omitted.) *Jones v. State*.[7] Here, however, the trial court failed to make any determination with regard to discriminatory intent. Instead, the trial court focused on the factual basis for the strike. "Where, as here, the court combines steps two and three of *Batson*, it prematurely evaluates the persuasiveness of counsel's explanations, thereby impermissibly placing the ultimate burden of persuasion upon the proponent of the strike." (Punctuation omitted.) *Smith*, supra at 460. "The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Punctuation omitted.) Id. The trial court's reseating of the jurors in question forced Williams to trial with an illegally constituted jury. Therefore, Williams must be given a new trial. See *Jackson v. State*;[8] *Malone v. State*;[9] *Gilbert v. State*;[10] *Pickett v. State*.[11]

*Judgment reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED APRIL 19, 2001.

*Randall, Nestor & Spivey, Brian T. Randall*, for appellant.
*Charles H. Weston, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.

---

[7] *Jones v. State*, 240 Ga. App. 339, 342 (1) (523 SE2d 402) (1999).
[8] *Jackson v. State*, 265 Ga. 897, 900 (463 SE2d 699) (1995).
[9] *Malone v. State*, 225 Ga. App. 315, 316-317 (1) (484 SE2d 6) (1997).
[10] *Gilbert v. State*, 226 Ga. App. 230 (486 SE2d 48) (1997).
[11] *Pickett v. State*, 226 Ga. App. 743 (487 SE2d 653) (1997).