A00A0974, A00A0975. STEPHENS v. THE STATE (two cases).
(538 SE2d 882)

ANDREWS, Presiding Judge.

John and Dwayne Stephens appeal from the judgment entered after a jury found them guilty of hijacking a motor vehicle. Because we conclude the trial court erred when it charged the jury that it was "not bound to believe incredible, impossible or inherently improbable" testimony, we reverse.

The evidence at trial, taken in the light most favorable to support the verdict, was as follows. Herman McCladdie and Mike Eubanks left Club Hollywood on the night in question and drove to Eubanks's house. They were driving a friend's car that had custom rims, hydraulic lifts and special paint. As they got out of the car, they noticed another car pull up. McCladdie and Eubanks had seen the car shortly before in the parking lot at Club Hollywood. Dwayne Stephens got out of the car and began talking with McCladdie and Eubanks, whom he knew from school. Shortly after, John Stephens, Dwayne's brother, got out of the car along with another man. The men talked for a little while, and then another man got out of the car

---

[7] Cf. *Gallogly v. Bradco, Inc.*, 260 Ga. 311 (1) (392 SE2d 529) (1990).
[8] *McGuire v. Norris*, 180 Ga. App. 383, 385 (2) (349 SE2d 261) (1986).

and pointed a sawed-off shotgun at McCladdie and Eubanks and told them to give up their car keys. In addition to the friend's car they had been driving, Eubanks's car was also parked nearby. The four men took the keys to the two cars, Dwayne Stephens got in Eubanks's car, one of the other men got in McCladdie's friend's car and John Stephens and the man with the shotgun got back in their car. After the three cars drove off, McCladdie and Eubanks ran to Eubanks's house, told his mother they had been robbed and got in his mother's car to chase the stolen cars. They saw a police officer at a gas station and told him of the theft.

The officer testified that he was at the gas station when McCladdie and Eubanks pulled in, jumped out of their car, ran up to him and told him their cars had been stolen. They said they thought the cars were headed south toward Florida on Highway 25 and described the three cars. The officer got in his car, another deputy followed him and both rode south on Highway 25. They overtook the three cars close to the Burke County line. The officers blocked the two stolen cars, but the third car went around the patrol cars and kept going.

John Stephens testified in his own defense and stated that he and his brother drove up from Florida to visit. They started talking to McCladdie and Eubanks and asked for a ride to where they were staying. Stephens said McCladdie and Eubanks loaned them the cars for the evening and they were to return them the next morning. He said the two other men who were with them were going on to Atlanta and he and his brother each borrowed one of the cars to drive to where they were staying for the night. Stephens denied any knowledge of a gun and said no one threatened McCladdie and Eubanks and no one stole either car.

1. The evidence was sufficient to support the verdict.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [defendant] no longer enjoys the presumption of innocence; moreover an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)].

*Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453) (1995).

2. Appellants argue that the hijacking statute was enacted to prevent the crime of taking an occupied motor vehicle, not a parked vehicle. They cite to no authority for this proposition, and we find none. In addition, the wording of the statute does not support this

argument. OCGA § 16-5-44.1 (b) provides that:

> A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so.

The statute does not require that the person be in the motor vehicle. Here, the evidence was that the cars were taken from the "presence of" the victims, and that was sufficient to prove the elements of the crime.

3. In their next enumeration of error, appellants contend the trial court erred in allowing the prosecutor to cross-examine John Stephens about drugs. Defense counsel did not object to this testimony at trial, and, therefore, appellants have waived any objection on appeal. *Allen v. State*, 272 Ga. 513, 515 (530 SE2d `186) (2000). Moreover, it was defense counsel who first introduced the subject by asking the victims whether they were smoking pot or using other drugs and in whose car the police found the marijuana; when in fact, the officer testified that there was no controlled substance recovered from either of the stolen cars.

4. Next, appellants argue that the trial court erred in charging the jury that "juries are not bound to believe testimony as to facts incredible, impossible or inherently improbable." Appellants contend that there was nothing in John Stephens's testimony that was improbable or incredible and, therefore, this charge was not warranted by the evidence. They also contend that this charge was an impermissible comment on the evidence. We agree.

In *Patton v. State*, 117 Ga. 230 (43 SE 533) (1903), the Supreme Court held:

> Courts and juries are not bound to believe testimony as to facts incredible, impossible, or inherently improbable. Great physical laws of the universe are witnesses in each case, which can not be impeached by man, even though speaking under the sanction of an oath.

Id.

In *Patton*, the case turned on whether a witness could have recognized the defendant from the sound of his voice. The witness barely knew the defendant, and the voice came from a considerable distance. Id. at 233. The court held that, under these circumstances, the evidence was insufficient to support the verdict. Id.

The high court explained that when testing the sufficiency

of the evidence, an appellate court cannot consider the credibility of witnesses, except that the court may hold that a witness's testimony is to be accorded no value under this circumstance, i.e., when it is not in accord with natural laws, or is improbable, incredible, or seeks to establish facts which are impossible, or which, if not impossible, must in their very nature be uncertain, vague, indefinite, and insufficient to remove reasonable doubts.

(Punctuation omitted.) *Brandon v. State*, 241 Ga. App. 887, 889 (2) (528 SE2d 809) (2000). In *Brandon*, as in this case, the defendant testified and told an improbable story in light of the evidence against him. Id. at 888.

"We have held that this exception applies in only extraordinary cases, . . . and only for statements which run contrary to natural law and the universal experience of mankind." (Citation and punctuation omitted.) *Brandon*, supra at 889 (2). Moreover, this charge tends to discredit a witness's testimony in the eyes of the jurors and can "confuse the jury as to the real issues." *Dixie-Ohio Express v. Brackett*, 106 Ga. App. 862, 874 (128 SE2d 642) (1962).

In this case, there was nothing about Stephens's story that ran contrary to the "great physical laws of the universe." Although the story may have been improbable, it was not impossible. *Brandon*, supra at 889 (2). Moreover, because Stephens's testimony was the sole defense at trial, and the erroneous charge discredited this testimony, the error was not harmless. Id. at 890. The charge was harmful error as to both defendants, and the judgments in both cases are reversed and the cases are remanded for a new trial.

5. We address the remaining enumerations of error to the extent they raise issues likely to recur on retrial. Appellants also claim the court erred in charging the jury on several inapplicable points of law. In one example, the court told the jury they could find the defendants guilty of "an attempt to commit a robbery, or any other charge in the indictment," without defining criminal attempt.

But, as the State points out, there was no evidence of the lesser included offense of attempt to commit a crime. The jury could either find the defendants guilty or believe the testimony of John Stephens, which was that they borrowed the cars. Although the charge was inapplicable, we fail to see how the appellants were harmed.

6. Appellants also point to several other instances where the court charged inapplicable points of law. Again, they can show no harmful error. The evidence at trial was not complicated or confusing, and the jury was charged on all of the elements necessary to find the defendants guilty of the crimes charged in the indictment. Therefore, we cannot say that these references to irrelevant matters could

have misled the jury and affected the verdict. See *Barr v. State*, 216 Ga. App. 554, 556 (455 SE2d 99) (1995).

7. In Case No. A00A0974, John Stephens contends that he was improperly resentenced. Stephens was sentenced to the maximum twenty years under the recidivist provisions of OCGA § 17-10-7 (a), with ten of the twenty years to be served on probation. The State moved to set aside this sentence, arguing that under OCGA § 16-5-44.1 (d) the "punishment prescribed by subsection (c) of this Code section shall not be deferred, suspended, or probated." Although the repeat offender statute does provide that the trial court may probate or suspend the maximum sentence prescribed for the offense, it also states that the trial court may do this "unless otherwise provided by law." The hijacking statute, OCGA § 16-5-44.1, does provide otherwise, and the trial court correctly resentenced John Stephens under this provision.

8. In Case No. A00A0975, Dwayne Stephens claims the trial court erred in denying his motion to sever. Stephens argues that during cross-examination of his brother, the prosecutor brought up the issue of illicit drug deals and this reflected adversely on him.

The factors a trial court must consider in exercising its discretion in regard to a motion to sever are (1) whether the number of defendants will create confusion as to the evidence and the law applicable to each, (2) whether there is a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, or whether the strength of the evidence against one defendant will engulf the other with a "spillover" effect, and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975); *Redding v. State*, 239 Ga. App. 718, 721 (521 SE2d 840) (1999). The burden is on the defendant requesting a severance of trials to make a clear showing of prejudice and denial of due process. *Cain*, supra.

In this case, the evidence against both defendants was substantial. Moreover, this was not a case where the strength of the evidence against one defendant would engulf the other with a "spillover" effect. See *Cain*, supra; *Martin v. State*, 162 Ga. App. 703, 704 (292 SE2d 864) (1982). The prosecutor's questions about drug trafficking were harmless in light of the clear and substantial evidence against both defendants. Thus, Dwayne Stephens has not shown that the trial court's denial of his motion to sever amounted to a violation of his due process rights.

*Judgments reversed. Ruffin and Ellington, JJ., concur.*

DECIDED SEPTEMBER 8, 2000.

Peter D. Johnson, for appellants.

Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, for appellee.