## A02A0554. HARRIS v. THE STATE.
## A02A0555. HARMON v. THE STATE.
(567 SE2d 394)

MIKELL, Judge.

Gloria A. Harris and Calvin J. Harmon were tried by a jury and convicted of conspiracy to defraud the state, Medicaid fraud, and making false writings. They appeal separately. In Case No. A02A0554, Harris claims that the trial court erred by (1) refusing to hold an evidentiary hearing on her motion to dismiss the indictment, (2) denying her motion to exclude evidence of events that allegedly transpired prior to the indictment, (3) granting the state's motion to exclude references to audits of other Medicaid transportation providers, and (4) denying her motions for mistrial and continuance. In Case No. A02A0555, Harmon contends that the trial court erred by (1) denying his motion for trial severance, (2) denying his motion for new trial on the ground of insufficient evidence, (3) holding that he

---

[17] See *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 965 (2) (214 SE2d 360) (1975); *Wright,* supra at 1284.

lacked standing to challenge the validity of the search, and (4) denying his motion for continuance. We affirm.

The trial transcript reveals that Harris owned and operated Wise Choice Transportation, Inc. (Wise), a nonemergency transportation (NET) provider.[1] Harmon was Wise's vice-president and office manager. The state presented numerous witnesses who testified that Harris and Harmon recruited children covered by Medicaid for transportation to various entertainment venues and then submitted falsified billing reports, called "trip sheets," to the state Department of Medical Assistance (DMA), which administers the Medicaid program, for these nonreimbursable services. One trip sheet listed Myrtle Beach, South Carolina, as its destination. In addition, Dr. William Brickhouse, a psychologist, testified that he did not sign the medical certification on the 35 trip sheets bearing his name that Wise submitted for reimbursement. "Calvin J. Harmon" is stamped underneath his purported signature on each report.

The allegedly fraudulent billing was discovered in October 1995, when the DMA conducted an audit of trip sheets submitted by Wise from July 1994 through June 1995. The auditor testified that she was unable to discover a valid destination on all 370 trip sheets she examined. An ongoing investigation led to the execution of a search warrant for Wise's premises in March 1998. The Georgia Bureau of Investigation (GBI) seized thousands of documents.

State forensic auditor Michael Ufret, who analyzed the documents, testified that he conducted a random sample of 532 claims for one-way trips submitted by Wise on August 1, 1994, and found only 132 trip sheets for those claims. In addition, Ufret discovered that from July 1994 through September 1996, Wise submitted 234 claims for one child alone. The child's mother testified that Wise took her son to the doctor a total of four times. Ufret testified that the DMA paid Wise $584,443.97 from July 1994 through September 1996.

### Case No. A02A0554

1. In her first enumerated error, Harris claims that the trial court erred by denying her an evidentiary hearing on her motion to dismiss the indictment, which alleged selective prosecution. We disagree.

"Uniform Superior Court Rule 31.1 requires all motions in a criminal case to be filed at or before the time of arraignment, unless time therefor is extended by the judge in writing prior to trial."[2] The

---

[1] NETs are reimbursed for transporting patients covered by Medicaid to "medically necessary" appointments, as that term is defined in Medicaid regulations.

[2] (Citation and punctuation omitted.) *Fetterolf v. State*, 223 Ga. App. 744, 747 (6) (478 SE2d 889) (1996).

record in this case shows that Harris waived arraignment on October 14, 1998, and the case was originally placed on the November 1998 trial calendar. The trial was continued until January 4, 1999, specially set for March 22, 1999, then reset for November 29, 1999. The motion to dismiss was not filed until November 15, 1999, 13 months after arraignment. Therefore, the motion was untimely, and the record does not show that Harris received an extension. Accordingly, Harris was not entitled to an evidentiary hearing.[3]

2. Harris next alleges that the trial court abused its discretion in refusing to exclude evidence relating to events that allegedly transpired prior to the indictment. However, Harris has failed to provide citations to the record identifying any evidence that was admitted concerning events outside the time alleged in the indictment. "We have repeatedly held that it is not the function of this court to cull the record on behalf of a party."[4] This is particularly true in a case such as this where the transcript alone exceeds 1,500 pages.[5] Accordingly, this enumeration presents nothing for review.

3. Harris argues that the trial court erred by granting the state's motion to exclude references to audits of other NET providers. Harris contended at trial that the evidence was necessary to support her selective prosecution defense. However, selective prosecution is a matter for the court to decide, not the jury,[6] and the trial court had already denied Harris's motion to dismiss on that ground. It follows that the trial court did not abuse its discretion in determining that the evidence at issue was irrelevant.

4. Finally, Harris argues that the trial court erred in denying two motions for mistrial and a request for continuance based upon the state's alleged discovery violations.

(a) Harmon, joined by Harris, first moved for a mistrial after opening statements, when the prosecutor said that Wise was the tenth-highest Medicaid billing provider in Carrollton. The defendants argued that the state violated OCGA § 17-16-4 (a) (4) by failing to produce audit reports of other Medicaid providers, despite the defendants' discovery request. The trial court denied the motion for mistrial. However, the court sustained Harmon's objection to the prosecutor's statement, Harmon withdrew the motion, and Harris said nothing. "A defendant dissatisfied with a trial court's action on a motion for mistrial must renew the motion. The failure to do so

---

[3] See id.

[4] (Citation and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268, 271 (3) (555 SE2d 908) (2001); Court of Appeals Rule 27 (c) (3).

[5] *Rolleston v. Cherry*, 226 Ga. App. 750, 753 (1) (b) (487 SE2d 354) (1997).

[6] *Morrison v. State*, 272 Ga. 129, 130 (3) (526 SE2d 336) (2000).

amounts to a waiver."[7] Having failed to renew the motion, Harris has no cause to complain on appeal.

(b) The defendants next made a joint motion for a mistrial and requested a continuance based upon the state's alleged violation of OCGA § 17-16-7, which requires the production of statements of witnesses no later than ten days prior to trial. Counsel for Harris sought the relief because the state failed to produce Dr. Brickhouse's 12-page statement until the morning of his testimony.

Harris concedes that the state was not required to serve her with a copy of the statement but was merely required to make it available for inspection.[8] The prosecutor stated that her office had an open file policy and that the statement had been in the file for a year preceding the trial. Harris's counsel stated that he had examined the file twice and had not seen the statement. He argued that the statement was critical and that if he had seen it, he would have interviewed the witness. The court recessed the trial for an hour and fifteen minutes to allow defense counsel an opportunity to interview Dr. Brickhouse. After the interview, counsel for Harris renewed his request for a continuance and moved to exclude Dr. Brickhouse's testimony. The trial court denied the motions.

When the state fails to comply with the discovery statute, "the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances." OCGA § 17-16-6. "In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial."[9] In order to ensure a fair trial, and in compliance with the statute, the trial court allowed defense counsel time to interview the witness. Moreover, even if Harris were able to show that the state acted in bad faith, she cannot demonstrate prejudice. Dr. Brickhouse testified that his signature had been falsified on 35 trip sheets that were stamped with Harmon's signature. Dr. Brickhouse never testified directly against Harris, and Harris did not cross-examine Dr. Brickhouse. It follows that the trial court did not abuse its discretion in denying Harris's motions for mistrial and a continuance based on the state's alleged discovery violations.

---

[7] *Braswell v. State*, 245 Ga. App. 602, 606 (6) (b) (538 SE2d 492) (2000).

[8] *Lawson v. State*, 224 Ga. App. 645, 647 (3) (a) (481 SE2d 856) (1997).

[9] *Blankenship v. State*, 229 Ga. App. 793, 794 (494 SE2d 758) (1997).

*Case No. A02A0555*

5. In his first enumerated error, Harmon argues that the trial court abused its discretion in denying his motion for trial severance. We disagree.

The trial court must consider three factors in determining whether to grant a motion to sever:

> (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.[10]

In addition, the burden is on the defendant requesting a severance of trials to make a clear showing of prejudice and a consequent denial of due process.[11]

In the case at bar, Harmon has failed to make the required showings. He does not argue evidentiary confusion; rather, Harmon contends that the great weight of the evidence was admissible only against Harris. The transcript, however, belies this assertion. Witnesses testified without contradiction that both Harmon and Harris came to their homes to recruit Medicaid-covered children for enrollment in Wise's "program." Further, the jury was entitled to infer from Dr. Brickhouse's testimony that Harmon falsified 35 trip sheets.

Harmon's reliance on *Price v. State*[12] is misplaced. In *Price*, "the evidence against one co-defendant was deemed to be so overwhelming and the evidence against the other so slight that the 'spillover' effect of the evidence against the former was viewed as an important factor in the latter's conviction."[13] "In this case, the evidence against [Harris] was indeed overwhelming, but the evidence against [Harmon] was equally compelling."[14]

Finally, we disagree with Harmon's characterization of the defenses as antagonistic. Neither Harmon nor Harris presented any evidence at trial, and Harris did not accuse Harmon of criminal activity, either during opening statements or closing arguments. With regard to Harris, Harmon argued only that she was responsible for enrolling Wise as a Medicaid provider and complying with the regulations, while Harmon was a mere employee. Harris admitted

---

[10] *London v. State*, 247 Ga. App. 618, 620 (1) (544 SE2d 525) (2001).
[11] *Stephens v. State*, 245 Ga. App. 823, 827 (8) (538 SE2d 882) (2000).
[12] 155 Ga. App. 844 (273 SE2d 225) (1980).
[13] *Saleem v. State,* 169 Ga. App. 952, 954 (2) (315 SE2d 487) (1984).
[14] *Thomas v. State*, 274 Ga. 156, 159 (2) (549 SE2d 359) (2001).

making "mistakes" but attributed them to the complexity of Medicaid regulations. Although these defenses were not identical, they were not antagonistic. Accordingly, the trial court did not abuse its discretion in denying Harmon's motion for severance.[15]

6. Harmon challenges the sufficiency of the evidence to support his convictions. Specifically, he contends that the state failed to prove that he conspired with Harris to defraud the state of Medicaid assistance payments or that he committed the offense of false writings. We disagree.

On appeal, we view the evidence in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[16]

(a) According to OCGA § 16-10-21 (a),

A person commits the offense of conspiracy to defraud the state when he conspires or agrees with another to commit theft of any property which belongs to the state or to any agency thereof or which is under the control or possession of a state officer or employee in his official capacity. The crime shall be complete when the conspiracy or agreement is effected and an overt act in furtherance thereof has been committed, regardless of whether the theft is consummated.

An express agreement need not be shown in order to establish a conspiracy.[17] Rather, "the state need only prove that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective."[18] "The essence of [a] conspiracy is a common design, and conduct which discloses a common design may give rise to an inference of conspiracy."[19] Moreover, a conspiracy may be inferred from the nature of the acts done, the relationship and interest of the alleged conspirators, and other circumstances.[20]

In this case, the state presented ample evidence from which the jury could infer that Harmon conspired with Harris to defraud the state. For instance, Kim Gage, a former employee of Wise, testified

---

[15] *Sharpe v. State*, 272 Ga. 684, 686 (2) (531 SE2d 84) (2000).

[16] *Spivey v. State*, 243 Ga. App. 785, 786 (534 SE2d 498) (2000).

[17] *Freeman v. State*, 273 Ga. 137, 139 (2) (a) (539 SE2d 127) (2000).

[18] (Citation omitted.) *Thurman v. State*, 249 Ga. App. 390, 391 (2) (a) (547 SE2d 715) (2001).

[19] (Citation and punctuation omitted.) *Freeman*, supra.

[20] *Thurman*, supra.

that when the company was notified that it would be audited, Harris and Harmon instructed her to falsify missing information on trip sheets. The witness also testified that Harmon told her that he would have the trip sheets signed by "whatever doctor that they knew." According to this witness and others, Harris and Harmon recruited children covered by Medicaid for transportation to various entertainment venues. The evidence of a conspiracy satisfied the appellate standard.[21]

(b) The crime of false writings is committed when a person "knowingly and willfully falsifies . . . a material fact . . . or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government."[22] In this regard, another former employee of Wise, Angela Lawson, testified that she witnessed Harris and Harmon falsifying mileage on trip sheets. The testimony of Lawson, Gage, and Dr. Brickhouse provides overwhelming evidence that Harmon committed the crime of false writings.

7. Harmon next asserts that the trial court erred in holding that he lacked standing to challenge the validity of the search of Wise's premises. Harris had filed a motion to suppress evidence seized as a result of the search, and Harmon filed a motion to adopt Harris's pleadings.

An evidentiary hearing was held on the motion to suppress. After hearing testimony from the GBI special agent who supplied the affidavit for the search warrant, the trial court permitted Harmon to testify for the limited purpose of determining whether documents belonging to Harmon had been seized. The trial court found that Harmon had moved his business from Wise's premises and had no ownership or possessory interest in the premises at the time the search warrant was executed. Accordingly, the court ruled that Harmon lacked standing to challenge the validity of the search.[23] Based on the testimony of the GBI agent, the court also held that the search was valid and denied the motion to suppress.

On appeal from the denial of a motion to suppress, we view the evidence in a light most favorable to support the trial court's judgment, and the court's findings on disputed facts and credibility must be accepted unless clearly erroneous.[24] Harmon testified that he

---

[21] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[22] OCGA § 16-10-20.

[23] *Thomas v. State*, 274 Ga. 156, 159 (3) (549 SE2d 359) (2001) ("When an individual has no ownership or possessory interest in the premises, the individual has no expectation of privacy, and therefore, lacks standing to challenge the validity of a search.").

[24] *Buckley v. State*, 254 Ga. App. 61 (561 SE2d 188) (2002).

moved from Wise's premises in mid-1997. It is undisputed that the warrant was executed in March 1998. Accordingly, the evidence supports the trial court's finding that Harmon had no ownership or possessory interest in the premises meriting Fourth Amendment protection.

8. Finally, Harmon argues that the trial court erred by denying his motion for a continuance to interview a "surprise" witness, Eleanor Smith. At the outset, we note that the witness was not a surprise, as her name appears on the witness list that was served on Harmon on December 4, 1998. Harmon's true complaint is that the state did not provide him with a copy of the witness's statement prior to trial. Apparently, a copy of the statement was supplied to Harris, who gave it to Harmon mid-trial. Harmon requested a recess to interview Smith, which the trial court granted. After the interview, Harmon requested a continuance, which the court denied.

Smith testified extensively against Harris, while her sole mention of Harmon was that she had "only met him once or twice." Smith testified that she was not even aware that Harmon was an employee of Wise. Given that Smith testified favorably for Harmon, we cannot conclude that the trial court erred in denying his motion for a continuance.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 25, 2002.

*Allen M. Trapp, Jr.*, for appellant (case no. A02A0554).
*Nathaniel L. Smith*, for appellant (case no. A02A0555).
*Thurbert E. Baker, Attorney General, Harrison W. Kohler, Senior Assistant Attorney General*, for appellee.