## A02A1388. GAY v. THE STATE.
### (574 SE2d 861)

MIKELL, Judge.

Omar Gay appeals his conviction of armed robbery and aggravated assault, arguing that the trial court erred in ruling that he engaged in purposeful racial discrimination during jury selection in the use of a peremptory strike against Juror No. 25. In addition, Gay asserts that the trial court erred in failing to grant him an additional peremptory strike to replace the one he lost when Juror No. 25 was

---

[22] Id.

[23] *Rebich v. Miles*, 264 Ga. 467 (448 SE2d 192) (1994).

seated. Finally, Gay contends that the trial court erred in allowing the state to present the testimony of a witness who had not been disclosed prior to trial. Finding no merit in these contentions, we affirm Gay's conviction.

1. Gay is African-American, and he exercised all 13 of his peremptory strikes to excuse Caucasian jurors. The state, relying on *Batson v. Kentucky*[1] and *Georgia v. McCollum*,[2] argued that Gay had engaged in purposeful discrimination on the basis of race and moved to disallow those peremptory strikes. After explanation by Gay's counsel, the state withdrew its challenge to five of the strikes, and the trial court denied the state's motion to disallow seven more. The trial court granted the state's motion to disallow Gay's strike of Juror No. 25 and seated him on the panel. Gay contends this was error.

In *McCollum*, the United States Supreme Court extended its decision in *Batson* and held that the equal protection clause precludes a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory strikes. When the state challenges a strike as racially motivated, a three-step process ensues: (1) the state must make out a prima facie case of racial discrimination; (2) if established, the burden of production shifts to the defendant to come forward with a race-neutral explanation;[3] and (3) if a race-neutral explanation is tendered, the trial court must decide whether the state has proved purposeful racial discrimination.[4] Throughout this process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the [state]."[5]

Because Gay used all of his peremptory challenges against Caucasians, the trial court concluded that the state had established a prima facie case of racial discrimination.[6] Gay then explained his reasons for excusing Juror No. 25 — the juror's mother was a probation officer, he supervised about ten employees, and his wife was scheduled to give birth by cesarean section the following week.

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992).

[3] In stage two, the trial court considers only the words of the explanation. Credibility, plausibility, and the speaker's demeanor are not relevant at stage two. See generally *Purkett v. Elem,* 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995); *Jackson v. State*, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995). Therefore, our review of a stage two reason is de novo, unlike our review of rulings in stage one (the prima facie case) and stage three (the motivation case). Our review of stage two is analogous to our review of summary judgments or to our former reviews of demurrers in common law pleading.

[4] *Purkett*, supra at 767-768; *Jackson*, supra.

[5] (Citation omitted.) *Purkett*, supra at 768; *Wolfe v. State*, 273 Ga. 670, 673 (3) (544 SE2d 148) (2001).

[6] See *Lingo v. State*, 263 Ga. 664, 665 (1) (437 SE2d 463) (1993); *White v. State*, 257 Ga. App. 723 (572 SE2d 70) (2002).

The trial court concluded that the reasons offered by Gay were race-neutral. The state responded that similarly situated African-American jurors had been seated on the jury. Specifically, Juror Nos. 7 and 12 had relatives in law enforcement. Juror No. 8 worked in a supervisory role. Juror No. 32 had severe congestion problems, difficulty sitting for long periods, and sole responsibility for caring for her sick brother and sister. The trial court found that Juror Nos. 7, 8, 12, and 32 were similarly situated to Juror No. 25. Specifically, the trial court found that the health problems of Juror No. 32 were equivalent to the impending birth of a child to Juror No. 25, to the extent that these factors would preoccupy a juror.

Gay continued to argue that Juror No. 25 should not be seated because "maybe he wants to get out of here. Maybe he is more sympathetic with the state; he's ready to get out of here; he supervises people. He can be a little more assertive and say let's go ahead, let's do this. These jurors need to take time with this case." Gay admitted, however, that Juror No. 25 indicated that jury service "wouldn't be a problem between now and Monday." Moreover, when an alternate juror expressed concern about his travel plans for the week of trial, the prosecutor stated he did not "anticipate the trial taking much longer than tomorrow afternoon." Gay's counsel quipped: "I hope it doesn't take that long." The court concluded that the state had met its burden of proving purposeful racial discrimination and seated Juror No. 25.

An overarching principle of appellate jurisprudence is that this Court does not substitute its judgment for that of the trier of fact.[7] "In determining whether a strike was in fact racially motivated, the trial court sits as the trier of fact, and its findings are entitled to great deference and will be affirmed unless clearly erroneous."[8] Applying this standard of review, we affirm the trial court's determination that Gay's strike of Juror No. 25 was racially motivated.

Gay contends that because no other juror was precisely similarly situated to Juror No. 25, racial discrimination cannot be found. This reasoning is flawed. It is based on a misinterpretation of *Lingo v. State*,[9] in which our Supreme Court held that "[w]here there are multiple reasons for striking a juror, white or black, it *cannot* be *presumed* that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated."[10] Nothing in

[7] *Bennett v. State*, 177 Ga. App. 643 (340 SE2d 273) (1986).

[8] (Punctuation omitted.) *McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997), citing *Turner v. State*, 267 Ga. 149, 151 (476 SE2d 252) (1996); accord *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987).

[9] Supra at 669.

[10] (Emphasis in original.) Id. at 668–669 (1) (c); see also *Ayiteyfio v. State*, 254 Ga. App. 1 (561 SE2d 157) (2002); *Knuckles v. State*, 236 Ga. App. 449, 451 (1) (a) (512 SE2d 333) (1999).

*Lingo* prohibits an inference of racial motivation when the trial judge determines that one is warranted under the totality of the circumstances.[11] To the extent that *Ayiteyfio v. State*[12] holds otherwise, it is hereby overruled.

It is well established that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[13] Contrary to this maxim, *Ayiteyfio* held that, as a matter of law, a trial court's decision in stage three of the *McCollum* inquiry is clearly erroneous unless the state can show that a struck juror was similar in all respects to a juror of another race whom the defendant did not strike. Specifically, in *Ayiteyfio*, the defendant, who was African-American, struck Juror No. 11, a Caucasian, for two reasons: her cousin was a police officer, and she had served on a jury before. The state could not show that any African-American juror whom the defense did not strike possessed both of those qualities, although one African-American juror had served on a jury before and another had a relative in law enforcement. Because no African-American juror possessed both of the qualities ascribed by the defense to Juror No. 11, *Ayiteyfio* found that the trial court clearly erred when it held that the defendant's strike of that juror was racially motivated.[14]

Similarly, in the case at bar, the defendant, an African-American, struck Juror No. 25, a Caucasian, for multiple reasons. No African-American seated on the jury satisfied all three of the criteria advanced for the strike of Juror No. 25. Application of *Ayiteyfio*'s "multiple reason" rule would prohibit the trial judge from inferring racial discrimination and would permit a defendant to find a pretext for a racially motivated strike by stating multiple reasons after extensive voir dire. Authorizing such pretexts gives trial counsel a foolproof way to evade *McCollum* at whim. But *McCollum* is the law, and it must be followed.

To overturn the trial court's determination in this case would constitute de novo appellate review of a ruling made at stage three of the *McCollum* inquiry. We will not contravene precedents obliging this Court to accord great deference to the trial court's findings and

---

[11] Cf. *Chandler v. State*, 266 Ga. 509 (467 SE2d 562) (1996) (applying a "multiple reason" rule in stage two of the *McCollum* analysis); *Jackson*, supra (trial court erred in stage two by refusing to accept defendant's explanations as race-neutral).

[12] Supra.

[13] (Punctuation omitted.) *McKenzie*, supra at 780, citing *Hernandez v. New York*, 500 U. S. 352, 369 (111 SC 1859, 114 LE2d 395) (1991).

[14] Moreover, *Ayiteyfio* was decided without the benefit of a complete appellate record, because voir dire was not recorded. Accordingly, the record did not reflect other factors that may have arisen during voir dire that led to the trial judge's decision.

to affirm them unless they are clearly erroneous.[15] Indeed, in *Lingo*, a majority of our Supreme Court chastised the dissent for advocating that the Court "act as a de novo forum for *Batson* review."[16] Further, as this Court has recognized, the United States Supreme Court has "made clear that appellate courts should not substitute their belief . . . for the trial court's determination, because the trial court sits as finder of fact with all the facts and circumstances before it."[17] In the case at bar, as happened in *Lingo*, there is a strong prima facie case of racial discrimination in the use of peremptory strikes.[18] As did the Supreme Court in *Lingo*, in this case we defer to the trial judge, who evaluated the conflicting evidence in stage three and ruled that one of the strikes was indeed racially motivated.[19]

In *Hinson v. State*,[20] Judge Eldridge argued in dissent that

> [t]his Court has repeatedly substituted its own evaluation of the striker's explanations for that of the trial court. In those instances wherein the trial court *disbelieves* otherwise race-neutral reasons, i.e., *McCollum* challenges, this Court routinely reverses. Accordingly, the efficacy of *McCollum* in Georgia has been seriously compromised.[21]

Today, we restore the efficacy of *McCollum* in Georgia. The trial judge's decision is affirmed.

2. Gay complains for the first time on appeal that he lost a strike by virtue of the court reseating Juror No. 25. However, Gay never raised this issue before the trial court. At the conclusion of jury selection, the trial court inquired: "Is this your jury, counsel?" The state responded affirmatively. The trial court then asked: "Any reason why this jury should not be sworn?" Gay's counsel replied: "Nothing from the defense, Your Honor." Having failed to request an additional strike, or any other remedy for the grant of the state's motion with respect to Juror No. 25, Gay has failed to preserve this issue for appellate review. "Any assertion of a *Batson* issue must be raised before the jurors are sworn, in order to allow the trial court to ensure

---

[15] *Turner*, supra; *Gamble*, supra; accord *McKenzie*, supra.

[16] *Lingo*, supra at 668 (1).

[17] *Knuckles*, supra at 451-452 (1) (b), citing *Purkett*, supra; *Hernandez*, supra.

[18] "Mr. Viscuse: Correct. That's my understanding. The Court: All right. I will allow that a prima facie case has been made and I'll ask that the burden of production shifts then to Mr. Francis to provide racially neutral reasons for his strikes if he can do that."

[19] See *White*, supra at 724 (2) ("a trial court's determination of a *Batson* or *McCollum* challenge rests largely on assessing the attorney's credibility and state of mind and therefore lies peculiarly within the province of the trial judge").

[20] 237 Ga. App. 366 (515 SE2d 203) (1999).

[21] (Footnote omitted; emphasis in original.) Id. at 374-375 (Eldridge, J., dissenting).

fairness and conserve judicial resources by applying an appropriate remedy in a timely fashion."[22]

3. Finally, Gay contends that the trial court reversibly erred in allowing Randy Miles to testify because his name did not appear on the state's witness list.[23] We disagree. When the state fails to comply with statutory discovery, "the court may order the state to permit the . . . interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from . . . presenting the witness not disclosed."[24] "In enacting [OCGA § 17-16-6], the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial."[25] As permitted by OCGA § 17-16-6, the trial court granted Gay an opportunity to interview Miles before he testified. Moreover, Gay has not demonstrated prejudice resulting from the state's failure to list Miles's name on the witness list submitted before trial. Accordingly, the trial court did not abuse its discretion in allowing this witness to testify.[26]

*Judgment affirmed. Blackburn, C. J., Andrews, P. J., Johnson, P. J., Smith, P. J., Eldridge and Ellington, JJ., concur. Pope, Senior Appellate Judge, concurs and concurs specially. Ruffin, P. J., Barnes, Miller and Phipps, JJ., concur in part and dissent in part.*

POPE, Senior Appellate Judge, concurring specially.

I join fully in the majority opinion, but write separately to express my concerns about the current state of *Batson* in Georgia. I am of the opinion that the parties in litigation should be able to select the jurors of their choice absent purposeful discrimination. And when *Batson v. Kentucky* was decided in 1986, the U. S. Supreme Court set forth a fairly straightforward procedure for evaluating allegations of purposeful discrimination in the jury selection process: (1) first the challenging party establishes a prima facie case by pointing to facts and circumstances giving rise to an inference that the other party has used peremptory strikes in a discriminatory fashion; and (2) then the party exercising the strikes had the opportunity to rebut that inference by articulating "a neutral explanation related to the particular case to be tried." *Batson v. Kentucky*, 476 U. S. 79, 97-98 (106 SC 1712, 90 LE2d 69) (1986).

---

[22] *Holmes v. State*, 273 Ga. 644, 645 (2) (543 SE2d 688) (2001) (defendant waived issue by failing to question remedy for improper peremptory strike).

[23] See OCGA § 17-16-8 (a).

[24] OCGA § 17-16-6.

[25] *Blankenship v. State*, 229 Ga. App. 793, 794 (494 SE2d 758) (1997).

[26] *Harris v. State*, 256 Ga. App. 120, 123 (4) (b) (567 SE2d 394) (2002).

Since that time, however, the courts have continued to refine that process. First, the U. S. Supreme Court itself clarified that *Batson*'s two-step analysis was actually the three-step process employed today. See, e.g., *Hernandez v. New York*, 500 U. S. 352 (111 SC 1859, 114 LE2d 395) (1991). Then the Court seemed to abandon the requirement that the neutral explanation for a strike be reasonably related to the case. See, e.g., *Purkett v. Elem*, 514 U. S. 765, 768 (115 SC 1769, 131 LE2d 834) (1995) (prosecutor's explanation that he struck juror because he had unkempt hair, along with a beard and a mustache, which seemed suspicious was sufficient to survive second prong of *Batson* analysis).

Even with these refinements, however, the U. S. Supreme Court made clear that appellate courts are to give great deference to the trial judge's determinations under *Batson*. *Hernandez*, 500 U. S. at 364-365. But in Georgia, the appellate courts have chipped away at that rule of deference by repeatedly stepping in to second-guess the trial judge on *Batson* analyses. See, e.g., *Hinson v. State*, 237 Ga. App. 366, 374, n. 4 (515 SE2d 203) (1999) (Eldridge, J., dissenting). The rule set out in *Ayiteyfio v. State*, 254 Ga. App. 1 (561 SE2d 157) (2002), is but another example of overreaching by the appellate courts. Although the dissent attempts to justify the "multiple reason" rule as a tool for a trial judge to determine when a juror is similarly situated, it is simply another encroachment upon the trial judge's decision-making process.

Accordingly, I agree that *Ayiteyfio* must be overruled and urge that the appellate courts in this state continue to follow the spirit of *Batson* by balancing the purposes behind the *Batson* rule with deference to the trial courts. Our Supreme Court aptly described the appellate court's role as follows:

> In evaluating the trial court's findings, this Court must keep in mind the unique perspective the trial court judge has in evaluating the rationale given by the [striking party]. A cold transcript cannot convey all of the subtle nuances of the process of jury selection. This [C]ourt gives the trial court's findings great deference. This Court, however, will not subvert the policy of *Batson* by acting as a rubber stamp, accepting all nonracial explanations of the court without exception. The [striking party] must show that its peremptory strikes of jurors are neutral, related to the case to be tried, and clear and reasonably specific.

(Citations omitted.) *Berry v. State*, 263 Ga. 493, 494 (435 SE2d 433) (1993).

BARNES, Judge, concurring in part and dissenting in part.

I concur in Divisions 2 and 3 of the majority opinion, but along with Judge Phipps, dissent to Division 1 and to the majority's decision to overrule *Ayiteyfio v. State*, 254 Ga. App. 1 (561 SE2d 157) (2002). *Ayiteyfio* simply involves the time-honored rule of applying apples to apples, and oranges to oranges. Thus, when the trial judge says that he finds discriminatory intent because a black juror with a relative in law enforcement remained seated while a white juror with a relative in law enforcement, *in addition to other factors*, was struck, he is comparing an apple to an orange. Therefore, the trial judge's conclusion based on this obvious error was clearly erroneous. The trial judge in *Ayiteyfio* did not base his conclusion on the totality of the circumstances; he based it on his erroneous determination that the two jurors were similarly situated when they were not.

The majority reads *Ayiteyfio* too broadly. Nothing in *Ayiteyfio* establishes a per se rule or limits a trial judge's discretion to accept, reject, or infer that any of the reasons proffered in support of a strike were or were not racially motivated. The case merely holds that when the trial court bases its finding on nothing more than a misapprehension of the facts, the finding will be held to be clearly erroneous.

This holding does not weaken the rule that appellate courts give great deference to the trial courts' determinations or does not encroach upon the trial courts' decision-making process; it merely points out that, as a factual matter, a juror with three undesirable characteristics is not similarly situated to another juror with only one of those characteristics. The appellate courts will continue to defer to the trial courts' discretion, so long as they consider *accurate* facts in determining whether the opposing party has proven that a strike is racially motivated.

For these reasons, I respectfully dissent to Division 1 of the majority.

I am authorized to state that Judge Miller joins in this dissent.

PHIPPS, Judge, concurring in part and dissenting in part.

I concur in Divisions 2 and 3 of the majority opinion, but dissent to Division 1 and to the majority's decision to overrule *Ayiteyfio v. State*.[27] Because the trial court erred by granting the State's *McCollum* motion, I would reverse.

Our review in this case is limited to the trial court's step three determination that the State proved purposeful racial discrimination based on Gay's peremptory strike of Juror No. 25, which determina-

---

[27] 254 Ga. App. 1 (561 SE2d 157) (2002).

tion was based not on the totality of the circumstances, but on its finding that Juror No. 25 was similarly situated to African-American jurors who were not struck. The trial court's stated reason for concluding that Gay struck Juror No. 25 because of his race was that several African-American jurors who were seated on the jury *collectively* satisfied the criteria used to excuse Juror No. 25, although no African-American juror satisfied all three criteria. Although the State may carry its burden of persuasion by showing that similarly situated members of another race were seated on the jury,[28] "[w]here there are multiple reasons for striking a juror, white or black, it *cannot* be *presumed* that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated."[29] Thus, a trial court cannot presume racial discrimination based on jurors being similarly situated when, in fact, they are not similarly situated. Here, Juror No. 25 was not similarly situated because the multiple reasons for striking him were not all applicable to any African-American juror seated on the jury.[30] For that reason, the trial court's conclusion that Gay engaged in purposeful racial discrimination when he struck Juror No. 25 was clearly erroneous.[31] And because the State failed to meet its ultimate burden of persuasion, placing Juror No. 25 on the jury resulted in an illegally constituted jury.[32] Thus, Gay is entitled to a new trial.[33]

In its zeal to affirm the trial court's decision, regardless of the conclusions reached, the majority misconstrues the *Ayiteyfio* decision. It does not preclude a trial judge from drawing an inference of discrimination when one is warranted under the totality of the circumstances. Instead, it sets forth a rule to be applied to determine whether a juror who has been struck is similarly situated to a juror of another race who was seated on the jury. This consideration may be crucial when ruling on a *McCollum* motion, to assist in determining if the State has met its burden of proving purposeful racial discrimination.

The rule established in *Ayiteyfio* was not intended to restrict the trial judge in any manner, but merely to aid the court in its step three analysis by giving some guidance on the definition of the term "similarly situated." This case presents a perfect example of why the rule will help, not restrict, trial judges. During voir dire, the trial court asked the State for guidance on whether a particular juror is

---

[28] See *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996).

[29] *Lingo v. State*, 263 Ga. 664, 668-669 (1) (c) (437 SE2d 463) (1993).

[30] *Ayiteyfio*, 254 Ga. App. at 3.

[31] See id.

[32] *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

[33] Id.

"similarly situated" if other jurors *collectively* satisfy the criteria used to excuse that juror. The State never responded to the court's request and neither party ever mentioned the rule set forth in *Ayiteyfio*, which could have resolved the issue without further time or effort by the trial court.

Nor should *Ayiteyfio* be overruled based on the majority's speculation that a defendant *may* invent additional reasons to strike a juror merely to evade *McCollum*. This defendant gave three race-neutral reasons, as determined by the trial court, for striking Juror No. 25.

I am authorized to state that Presiding Judge Ruffin, Judge Barnes and Judge Miller join in this dissent.

DECIDED NOVEMBER 27, 2002.

*Dennis C. Francis, Jr.*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.